NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
Is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

04-3409

WILLIAM R. SHOAF,

Petitioner,

v.

DEPARTMENT OF AGRICULTURE,

Respondent.

_____

DECIDED: October 14, 2005

_____

Before CLEVENGER, RADER, and DYK, Circuit Judges.

RADER, Circuit Judge.

The Merit Systems Protection Board (Board) held that it lacked jurisdiction to hear Mr. Shoaf's appeal because his resignation was not involuntary. Shoaf v. Dep't of Agric., 97 M.S.P.R. 68 (2004) (Shoaf III). Because the Board's decision is supported by substantial evidence, this court affirms.

## BACKGROUND

Mr. Shoaf resigned from the United States Forest Service (the agency) in 1995. In 1996, Mr. Shoaf appealed to the Board. He alleged that his resignation was involuntary and that he was constructively discharged in retaliation for making disclosures protected under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8) (1994). The Board determined that it lacked jurisdiction over Mr.

Shoaf's appeal because his separation was neither a constructive removal action taken by the agency nor a "personnel action" under the Whistleblower Protection Act. Shoaf v. Dep't of Agric., 84 M.S.P.R. 524 (1999) (Shoaf I). On appeal, this court held that the administrative judge had mistakenly limited his analysis to events that occurred after September 1993, when Mr. Shoaf voluntarily transferred within the agency to the position from which he ultimately resigned. Thus, in determining whether Mr. Shoaf was constructively discharged, the administrative judge failed to consider "the totality of the circumstances," including alleged retaliation against Mr. Shoaf's whistle-blowing activities that took place before the 1993 transfer. This court vacated and remanded, with instructions to consider events that occurred after 1990, when Mr. Shoaf transferred into the position in which his troubles with the agency began, through the 1993 transfer. Shoaf v. Dep't of Agric., 260 F.3d 1336 (Fed. Cir. 2001) (Shoaf II). On remand, the Board again held that it had no jurisdiction because Mr. Shoaf had not met "his burden of proving by preponderant evidence that his resignation was involuntary because he did not prove that a reasonable person in his position would have felt compelled to resign, effective March 31, 1995, under the totality of the circumstances in this appeal." Shoaf III at 79.

Shoaf II summarizes the facts of this case. In brief, Mr. Shoaf worked for the agency as a Forestry Systems Analyst and had performance ratings of "fully successful" or "outstanding" from 1978 through 1990. In April 1990, he transferred to the Tongass National Forest (the Tongass) to help prepare for the sale of timber in old-growth forest. In July 1991 Mr. Shoaf began to criticize,

both within the agency and publicly, the Forest Service's timber management practices. As a result, Mr. Shoaf was publicly reprimanded, prohibited from speaking to the media, and lost some of the responsibilities of his position. On July 6, 1993, Mr. Shoaf filed a whistle-blower disclosure with the Office of Special Counsel (OSC), alleging that he was the victim of retaliation and discrimination as a result of his criticism of the Forest Service.

In September, 1993, the Forest Service eliminated Mr. Shoaf's position, and he voluntarily accepted a new position as a "Special Projects Forester" with the Timber staff in Ketchikan, Alaska. This non-supervisory position did not exist prior to Mr. Shoaf's tenure and was abolished when he left it. Mr. Shoaf was busy only approximately sixty per cent of the time from January 1994 through August 1994, and had virtually no work for the remainder of the year. In February 1995, Mr. Shoaf resigned, accepting $25,000 as part of an incentive program offered by the Government for early retirement.

On September 21, 1995, Mr. Shoaf wrote to OSC, alleging that he was "forced out" of his job with the Forest Service as a result of the whistle-blowing disclosures. On May 8, 1996, the OSC issued a notice of termination of its inquiry into Shoaf's complaint. On October 31, 1996, Mr. Shoaf requested corrective action by the Board. Mr. Shoaf's appeal to the Board was based on the assertion that the agency had made his working conditions so intolerable through "deliberate idling" that any reasonable employee in his situation would have felt compelled to resign. Shoaf v. Dep't of Agric., No. SE-0752-96-0462-I-2 p. 8 (M.S.P.B. Sept. 11, 1998). The administrative judge held that the agency's

actions did not constitute circumstances under which a reasonable person would be "forced" to resign, and that Mr. Shoaf had not shown that his separation was either a constructive removal action or a "personnel action" under the Whistleblower Protection Act. Consequently, the Board lacked jurisdiction over, and thus dismissed, Mr. Shoaf's appeal.

On appeal, this court held that the Board had abused its discretion "by completely failing to consider the pre-transfer activities concerning Shoaf on the Tongass . . . events occurring from the time period commencing on the date of Shoaf's transfer to the Tongass in April 1990, including actions and inactions by his supervisors during the relevant time period and his transfer to the timber unit." Shoaf II at 1343.

## DISCUSSION

### A. Standard of Review

This court must affirm a Board decision unless it is: "(1) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedure required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1996); Hayes v. Dep't of Navy, 727 F.2d 1535, 1537 (Fed. Cir. 1984).

To prevail on the merits of a constructive discharge case, the petitioner must show by preponderant evidence that his resignation was involuntary. See Shoaf II, 260 F.3d at 1341 (where an employee shows by preponderant evidence that his resignation was involuntary, he prevails on jurisdiction and the merits). However, we need not resolve the issue of whether, in such cases, the Board's

jurisdiction attaches upon a non-frivolous allegation by the petitioner that the resignation was involuntary, or upon a showing by preponderant evidence. See Garcia v. Dep't of Homeland Security, 412 F.3d 1330 (Fed. Cir. 2005). If, after an evidentiary hearing, Mr. Shoaf cannot show by preponderant evidence that his resignation was involuntary, then his case fails, either for lack of jurisdiction or on the merits.

### B. "Involuntary" Dismissal

In its decision on remand, the Board listed several factors which led the administrative judge to find that pre-transfer (pre-1993) events did not lend "significant support" to Mr. Shoaf's claim of involuntary resignation in 1995. Shoaf III at 9-10. In this list, of special import are the facts that that claim was based on alleged deliberate idling in his post-transfer position, and that there was a nineteen-month delay between the transfer and Mr. Shoaf's resignation. See Terban v. Dep't of Energy, 216 F.3d 1021, 1024 (Fed. Cir. 2000) (the most probative evidence of involuntariness "will usually be evidence in which there is a relatively short period of time between the employer's alleged coercive act[s] and the employee's retirement"). The Board also noted the administrative judge's comparison of Mr. Shoaf's pre-transfer position with his post-transfer position, in which Mr. Shoaf's duties, supervisor, and contacts with his pre-transfer colleagues were different. The administrative judge pointed out that the agency's pre-transfer activities, e.g., in limiting Mr. Shoaf's responsibilities and public exposure, were not related to the working conditions in his new, post-transfer position. Shoaf III at 10. In essence, the Board, on remand, considered pre-

transfer events and found that they did not provide sufficient evidence that Mr. Shoaf had been coerced into involuntarily resigning due to deliberate idling in his post-transfer position.

On the other hand, the Board found substantial evidence to support its decision that no coercion in the form of deliberate idling had occurred at all. That evidence included the testimony of Mr. Shoaf's post-transfer supervisor, presented before the administrative judge; the lack of adverse influence on Mr. Shoaf's work load by Mr. Shoaf's second-level supervisor, who had been implicated in the pre-transfer events; Mr. Shoaf's lack of initiative in finding additional work on his own; and the presence of work opportunities in an airborne mapping program that became available to Mr. Shoaf before his resignation. Shoaf III at 11.

In considering, as directed by this court, events which occurred prior to 1993, the Board found that these events may have "contributed to his dissatisfaction, but did not provide significant support" for his claim of involuntary resignation in 1995, i.e., that they were not so intolerable that a reasonable person in the employee's position would have felt compelled to resign. See Middleton v. Dep't of Defense, 185 F.3d 1374, 1379 (Fed. Cir. 1999). Thus, even though the pre-transfer activities of both Mr. Shoaf and the agency may have resulted in an environment in which Mr. Shoaf found it unpleasant to work, the allegedly retaliatory actions in the pre-transfer period combined with the alleged "deliberate idling" in the post-transfer period did not result in a situation where a

reasonable person in Mr. Shoaf's position would have felt compelled to resign.

For this reason, this court affirms.